# IN THE UNITED STATES DISTRICT COURT
# OF THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. LACORAEY S. WILLS<br><br>2. ALBERT L. BEASLEY<br><br>    Plaintiffs, on behalf of<br>    themselves and others similarly situated,<br>v.<br><br>1. PREMIER TRADIING AND<br>    TRANSPORTATION, LLC,<br><br>2. NORMAN RANDY COLLUM,<br>    individually,<br><br>3. DUSTY COLLUM, individually, and<br><br>4. JASE COLLUM, individually,<br><br>    Defendants. | Case No. CIV- 21- 246 - G<br><br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COME NOW** the Plaintiffs, on behalf of themselves and other similarly situated, and hereby allege that:

## PARTIES

1. The Plaintiffs are LaCoraey S. Wills, an adult residing in Oklahoma County, Oklahoma, and Albert L. Beasley, an adult residing in Lincoln County, Oklahoma. Both named plaintiffs bring claims on behalf of themselves and others similarly situated.

2. The Defendants are:

1

    A.    Premier Trading and Transportation, LLC ("Premier"), a domestic limited liability company doing business in Payne County, Oklahoma;

    B.    Norman Randy Collum, an individual resident of Payne County, Oklahoma;

    C.    Dusty Collum, an individual resident of Payne County, Oklahoma; and

    D.    Jase Collum, an individual resident of Payne County, Oklahoma.

## JURISDICTION AND VENUE

3. The Plaintiffs bring claims for breach of contract in violation of Oklahoma law, and failure to pay wages (including minimum and overtime wages), in violation of the Fair Labor Standards Act (FLSA) and Oklahoma's Protection of Labor Act (OPLA). Jurisdiction is proper over the federal claim under 28 U.S.C. § 1331. Jurisdiction over the state claims exists under 28 U.S.C. § 1367.

4. Defendant Premier's principal place of business is in Payne County, a county within the United States District Court for the Western District of Oklahoma such that venue is proper in this Court. The majority of conduct giving rise to this lawsuit occurred in Payne County, Oklahoma. Payne County is a county within the United States District Court for the Western District of Oklahoma. Thus, venue is proper in this Court.

## STATEMENT OF FACTS

5. Defendant Premier is a freight trucking company that hauls materials such as petroleum through Oklahoma and to other states including Texas.

6. Defendant Premier contracted with third parties such as Phillips 66 to transport crude oil and other materials and has at least five hundred thousand dollars ($500,000 in annual gross revenue).

7. Defendants Norman Randy Collum, Dusty Collum and Jase Collum (collectively "Column Defendants") are all supervisors of Defendant Premier and supervised the Plaintiffs and other drivers.

8. Defendant Norman Randy Collum act directly and/or indirectly in the interests of Defendant Premier in that:

   A. He determines pay for both Company Drivers and Owner-Operators;

   B. He has authority to control the schedule and conditions of Company Drivers and Owner-Operators job duties;

   C. He has supervisory capacity over Defendant Premier's personnel, including, dispatchers, Company Drivers, and Owner-Operators;

   D. He has authority to hire and fire personnel of the Defendant Premier, including authority to end any agreement with an Owner-Operator currently employed with Defendant Premier; and

   E. He has authority to contract with third-party petroleum and gas companies for service contracts that are then carried out by the Company Drivers and Owner-Operators of Defendant Premier.

9. Defendant Dusty Collum acts directly and/or indirectly in the interests of Defendant Premier in that:

  A. He has authority to contract with third-party petroleum and gas companies for service contracts that are then carried out by the Company Drivers and Owner-Operators of Defendant Premier;

  B. He has supervisory capacity over Defendant Premier's personnel, including dispatchers, Company Drivers, and Owner-Operators;

  C. He has authority to hire personnel, including authority to end any agreement with an Owner-Operator currently employed with Defendant Premier; and

  D. He has authority to coordinate Defendant Premier's Owner-Operators to execute the terms of the service contracts between Defendant Premier and third-party petroleum and gas companies.

10. Defendant Jase Collum acts directly and/or indirectly in the interests of Defendant Premier in that:

  A. He has authority to bid on contracts on the behalf of Defendant Premier with third-party petroleum and gas companies for agreements to transport crude oil;

  B. He has supervisory capacity over drivers (including Plaintiffs and those similarly situated); and

  C. Executes contracts between Defendant Premier and Owner-Operators.

11. Plaintiff Wills worked for Defendants from around April 5, 2018 until around June 5, 2020.

12. From around April 5, 2018 until around March 30, 2019 Defendants paid Plaintiff Wills in the form of wages, with appropriate federal and state payroll and other wage-related withholdings, and issued Plaintiff wills an IRS W-2 form reflecting paid wages.

13. Plaintiff Beasley worked for Defendants from around September 11, 2018 until around April 2020.

14. From around September 11, 2018 until around May 3, 2019 Defendants paid Plaintiff Beasley in the form of wages, with appropriate federal and state payroll and other wage-related withholdings, and issued Plaintiff Beasley an IRS W-2 form reflecting paid wages.

### A – Plaintiff Wills

15. Around March 2019, Plaintiff Wills was told by Virgil Brewington (Field Supervisor), Defendant Dusty Collum, and Defendant Jase Collum that Plaintiff Wills could purchase a semi-truck from Defendant Premier to be used to transport crude oil on behalf of Defendant Premier.

16. Mr. Brewington, Defendant Dusty Collum, and Defendant Jase Collum told Plaintiff Wills that he would be purchasing the vehicle with financing offered through Defendant Premier and that each payment made to Defendant Premier would be for the purchase of the vehicle.

17. Plaintiff Wills explained that he intended to purchase a vehicle so that he (Plaintiff Wills) could work for himself and use the vehicle he purchased to perform services for Defendant and also other entities who contracted with truckers to haul products.

18. Mr. Brewington specifically told Plaintiff Wills that because Plaintiff was purchasing the vehicle, he (Plaintiff Wills) was the owner of the vehicle and, thus, would be allowed to use and operate the vehicle as Plaintiff Wills chose, including by using the vehicle to perform services for other entities.

19. On March 29, 2019, Plaintiff Wills and Defendant entered into a written contract titled "Security Agreement" (hereinafter "Wills Security Agreement"), which provided in part that Plaintiff borrowed from Defendant funds necessary for Plaintiff to complete purchase of the vehicle known as "2012 Peterbilt" with a VIN ending in 0721.  Defendant charged an interest rate of twenty percent (20%) on the loan.

20. On March 30, 2019, Plaintiff Wills entered into a written contract titled "Premier Trading and Transportation LLC Independent Contractor Agreement" (hereinafter "Wills Contractor Agreement").

21. Although the Wills Contractor Agreement identified Plaintiff Wills as an independent contractor, Defendant Premier treated Plaintiff as an employee including by:

    A. Refusing to allow Plaintiff Wills to use his vehicle to perform services with other entities.  Plaintiff Wills was told that he could only perform services for Defendant Premier.  Plaintiff Wills was told that if he performed services for other entities, he would no longer be allowed to perform services for Defendant Premier;

B.     Defendant Premier required Plaintiff to obtain fuel for his vehicle through a fuel card provided by Defendant Premier which the cost of said fuel was then deducted from the Plaintiff's compensation;

C.     Defendant Premier required Plaintiff to obtain the financing for Plaintiff's vehicle through Defendant Premier and to purchase a vehicle only through Defendant Premier rather than a third-party financing company and/or dealer;

D.     Defendant Premier required Plaintiff to purchase insurance for the vehicle through Defendant Premier and the amount was deducted through Plaintiff's paycheck;

E.     Defendant Premier refused to provide Plaintiff Wills with the title and other documents showing ownership of the vehicle, even though Plaintiff, as discussed in paras. 15-20, had purchased the vehicle with a loan financed through Defendant Premier;

F.     Defendant Premier required Plaintiff Wills to report any on-the-job spill and would charge Plaintiff Wills a 10% markup on the clean-up cost by deducting the same from Plaintiff Wills' paycheck;

G.     Defendant Premier periodically required Plaintiff Wills to go through Defendant Premier to make repairs to his vehicle. For instance, around May or June 2020, Defendant Premier ordered Plaintiff Wills to repair his "front main seal", even though the repair was not necessary by Department of Transportation standards. Defendant Premier told Plaintiff Wills that he

could not perform any services for Defendant Premier unless he allowed Defendant Premier to repair the "front main seal." Plaintiff Wills agreed, believing he had no choice, and allowed Defendant Premier to take the vehicle for the sole purpose of working on the "front main seal." However, without Plaintiff Will's permission, Defendant worked on other parts of the vehicle and thereafter charged Plaintiff Wills approximately twelve thousand dollars for "repairs" that were not requested or authorized by Plaintiff Wills.

22. According to the Wills Contractor Agreement:

    A. Plaintiff Wills had the title to or was authorized to contract the vehicle, "2012 Peterbilt" and provide services to Defendant Premier;

    B. The party terminating the Wills Contractor Agreement was required to give the non-terminating party fifteen days written notice;

    C. Upon termination of the Agreement, Plaintiff Wills shall remove all of Defendant Premier's identification from the vehicle and return such identification to Defendant Premier;

    D. Plaintiff Wills' compensation shall be set forth by a "Rate Sheet" which shall be provided to Plaintiff Wills. The "Rate Sheets" are unique to the specific company for which Plaintiff Wills was providing services for through his employment with Defendant Premier.

23. Defendant Premier informed Plaintiff Wills that he was required to purchase fuel with Defendant's fuel card, which Defendant Premier would then deduct the amount of fuel purchased from Plaintiff Wills' compensation.

24. Plaintiff Wills:

    A. Did not draft, in whole or in part, the contract, nor did Plaintiff Wills have an agent or representative draft the contract, in whole or in part;

    B. Was not allowed to, and did not, have any input into the terms and conditions within the contract; and

    C. Was not given the opportunity to modify the contract.

25. Plaintiff Wills was told by Defendant Premier that the contract presented to him was for the purpose of purchasing the vehicle, a 2012 Peterbilt, with VIN ending 0721.

26. Among other terms, the contract provided that Defendant Premier shall furnish Plaintiff Wills a receipt for the vehicle, which shall constitute the receipt required by 49 C.F.R. § 376.11(b).

27. During this time, Defendant Premier also contracted with other individuals to drive vehicles to transport crude oil.

### B – Plaintiff Beasley

28. On May 3, 2019, Plaintiff Beasley and Defendant entered into a written contract titled "Security Agreement" (hereinafter "Beasley Security Agreement"), which provided in part that Plaintiff borrowed from Defendant funds necessary for Plaintiff to complete purchase of the vehicle known as "2006 Peterbilt" with a VIN ending in 5445. Defendant charged an interest rate of twenty percent (20%) on the loan.

29. On May 3, 2019, Plaintiff Beasley entered into a written contract titled "Premier Trading and Transportation LLC Independent Contractor Agreement" (hereinafter "Beasley Contractor Agreement").

30. Although the Beasley Contractor Agreement identified Plaintiff Beasley as an independent contractor, the Defendants treated Plaintiff as an employee including by:

   A. Refusing to allow Plaintiff Beasley to use his vehicle to perform services with other entities. Plaintiff Beasley was told that he could only perform services for Defendant Premier. Plaintiff Beasley was told that if he performed services for other entities, he would no longer be allowed to perform services for Defendant Premier;

   B. Defendant Jase Collum required Plaintiff Beasley to obtain the financing for Plaintiff Beasley's vehicle through Defendant Premier and to purchase a vehicle only through Defendant Premier rather than a third-party financing company;

   C. Defendants required that Defendant Premier purchase and provide insurance for the vehicle driven by Plaintiff Beasley, the amount of which would be deducted from Plaintiff Beasley's compensation;

   D. Defendants refused to provide Plaintiff Beasley with the title and other documents showing ownership of the vehicle, even though Plaintiff Beasley, as discussed in paras. 28-29, had purchased the vehicle with a loan financed through Defendant Premier.

   E. Defendant Premier required Plaintiff Beasley to report any on-the-job spill and would charge Plaintiff Wills a 10% markup on the clean-up cost by deducting the same from Plaintiff Wills' paycheck;

    F.    Defendants periodically required Plaintiff Beasley to go through Defendant Premier to make repairs to his vehicle and would not allow Plaintiff to go through other entities for such repairs.

31.    According to the Beasley Contractor Agreement:

    A.    Plaintiff Beasley has the title to or is authorized to contract the vehicle, "2006 Peterbilt" and services to Defendant Premier;

    B.    The party terminating the Beasley Contractor Agreement was required to give the non-terminating party fifteen days written notice;

    C.    Upon termination of the Beasley Contractor Agreement, Plaintiff Beasley shall remove all of Defendant Premier's identification from the vehicle and return such identification to Defendant Premier.

    D.    Plaintiff Beasley's compensation shall be set forth by a "Rate Sheet" which shall be provided to Plaintiff Beasley. The "Rate Sheets" are unique to the specific company for which Plaintiff Beasley was providing services for through his employment with Defendant Premier.

32.    Plaintiff Beasley:

    A.    Did not draft, in whole or in part, the contract, nor did Plaintiff Beasley have an agent or representative draft the contract, in whole or in part;

    B.    Was not allowed to, and did not, have any input into the terms and conditions within the contract; and

    C.    Was not given the opportunity to modify the contract.

33. Plaintiff Beasley was told by Defendants that the contract presented to him was for the purpose of purchasing the vehicle, a 2006 Peterbilt, with VIN ending 5545.

34. Among other terms, the contract provided that Defendant Premier shall furnish to Plaintiff a receipt for the vehicle, which shall constitute the receipt required by 49 C.F.R. § 376.11(b).

## COUNT I

Plaintiffs incorporate the above paragraphs and further allege:

35. Defendants' failure to comply with the written contracts entered into with the Plaintiffs resulted in a breach of such contracts in violation of Oklahoma law.

36. Under this Count Plaintiffs are entitled to all remuneration and funds owed, as well as recovery of all other losses resulting from the breach.

37. Plaintiffs are also entitled to an award of attorney fees (and costs) because Plaintiffs seek recovery for labor and/or services rendered under the contracts.

## COUNT II

Plaintiffs incorporate the above paragraphs and further allege:

38. This Count goes to all Defendants.

39. Defendants misclassified Plaintiffs as independent contractors and failed to pay them minimum and overtime wages in violation of the Fair Labor Standards Act.

40. Under this Count the Plaintiffs are entitled to their wages earned, but not paid, including minimum wages, and liquidated damages up to the amount of their wage loss.

41. Plaintiffs are also entitled to an award of liquidated damages up to the amount of their unpaid wages.

## COUNT III

Plaintiffs incorporate the above paragraphs and further allege:

42. This Count goes to all Defendants.

43. Failure to pay all wages agreed upon and owed violates the Oklahoma Protection of Labor Act.

44. Under this Count the Plaintiffs are entitled to their wages earned, but not paid, including minimum wages, and liquidated damages up to the amount of their wage loss.

45. Plaintiffs are also entitled to an award of liquidated damages up to the amount of their unpaid wages.

## COLLECTIVE/CLASS CERTIFICATION

46. To Plaintiffs' knowledge there are at least ten to twenty employees of Defendants who, like Plaintiffs, have been misclassified as independent contractors and have not been paid all wages earned (including minimum wage).

47. Defendants have taken the following actions with respect to the Plaintiffs and others who have also worked as drivers for Defendants:

    A. misclassified drivers as independent contractors;

    B. failed to pay drivers minimum and overtime wages; and/or

    C. failed to pay drivers all wages agreed upon and earned.

48. The actions described above constitute:

    A. failure to pay minimum and overtime wages in violation of the FLSA;

    B. failure to pay all wages agreed upon and earned, and failure to pay minimum wages, in violation of the OPLA.

49. The Plaintiffs, together with others who performed as drivers and were misclassified as independent contractors were together the victims of a single decision, policy or plan of mis-classifying persons as independent contractors and failing to pay them wages they are owed, including minimum wages, overtime wages and agreed upon wages, in violation of the Fair Labor Standards Act and Oklahoma's Protection of Labor Act.

50. The class is specifically knowable. Others who performed as drivers and were not classified as employees by defendants, are similarly situated to the Plaintiffs in that they worked for the same employers, worked under the same job titles, were also incorrectly mis-classified as independent contractors, earned wages (including minimum and overtime wages) but were not paid such wages and were not paid wages they were promised by the employer although such promises were made prior to the wages being earned.

51. For these reasons, the Plaintiff is entitled to conditional certification of the class under the FLSA at this time and, after discovery is substantially complete, to final certification of the class under the FLSA and OPLA.

52. The class is sufficiently numerous that it is impractical to name each member of the class individually and such that a class action is most economical, expeditious and just way of managing this claim.

53. There are questions of law or fact common to the class, including whether the employees worked hours and earned wages for which they were not compensated.

54. Plaintiff, as the class representative, shares the same questions of law and fact with other class members and will fairly and adequately protect the interests of the class.

55. The only factual matter different between the collective plaintiffs would be the amount of wages lost and damages owed.

## PRAYER

**WHEREFORE**, Plaintiff, on behalf of himself and others similarly situated, respectfully requests this Court enter judgment in his favor and against the Defendants and grant them all compensatory damages suffered, together with punitive damages, liquidated damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper in an amount in excess of that required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

**RESPECTFULLY SUBMITTED THIS 22nd DAY OF MARCH 2021.**

HAMMONS, HURST & ASSOC.

Amber L. Hurst
Mark Hammons, OBA No. 3748
Amber L. Hurst, OBA No. 21231
Brandon D. Roberts, OBA No. 34012
325 Dean A. McGee Ave.
Oklahoma City, Oklahoma 73102

(405) 235-6100; (405) 235-6111 (fax)
brandon@hammonslaw.com
*Counsel for Plaintiff*
ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED