# IN THE UNITED STATES DISTRICT COURT
# OF THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. LACORAEY S. WILLS ) <br> ) <br> 2. ALBERT L. BEASLEY ) <br> ) <br> Plaintiffs, on behalf of ) <br> themselves and others similarly situated, ) <br> v. ) <br> ) <br> 1. PREMIER TRADIING AND ) <br>    TRANSPORTATION, LLC, ) <br> ) <br> 2. NORMAN RANDY COLLUM, ) <br>    individually, ) <br> ) <br> 3. DUSTY COLLUM, individually, and ) <br> ) <br> 4. JASE COLLUM, individually, ) <br> ) <br> Defendants. ) | Case No. 2021-CV-246-G |

## FIRST AMENDED COMPLAINT

**COME NOW** the Plaintiffs, on behalf of themselves and other similarly situated, and hereby amends their Complaint as allowed under Fed.R.Civ.P.15(a)(1):

## PARTIES

1. The Plaintiffs are LaCoraey S. Wills, an adult residing in Oklahoma County, Oklahoma, and Albert L. Beasley, an adult residing in Lincoln County, Oklahoma. Both named plaintiffs bring claims on behalf of themselves and others similarly situated.

2. The Defendants are:

   A. Premier Trading and Transportation, LLC ("Premier"), a domestic limited liability company doing business in Payne County, Oklahoma;

1

    B.    Norman Randy Collum, an individual resident of Payne County, Oklahoma;

    C.    Dusty Collum, an individual resident of Payne County, Oklahoma; and

    D.    Jase Collum, an individual resident of Payne County, Oklahoma.

## JURISDICTION AND VENUE

3.    The Plaintiffs bring claims for

    A.    Breach of contract in violation of Oklahoma law;

    B.    The torts of deceit, fraud and conversion; and

    C.    Violation of the Truth-in-Leasing provisions of the federal Motor Carriers Act., 49 U.S.C. §§ 13101, 14704, *inter alia*.

Jurisdiction is proper over the federal claim under 28 U.S.C. § 1331. Jurisdiction over the state claims exists under 28 U.S.C. § 1367.

4.    Defendant Premier's principal place of business is in Payne County, a county within the United States District Court for the Western District of Oklahoma such that venue is proper in this Court. The majority of conduct giving rise to this lawsuit occurred in Payne County, Oklahoma. Payne County is a county within the United States District Court for the Western District of Oklahoma. Thus, venue is proper in this Court.

## STATEMENT OF FACTS

5.    Defendant Premier is a freight trucking company that hauls materials such as petroleum through Oklahoma and to other states including Texas.

6. Defendant Premier contracted with third parties such as Phillips 66 to transport crude oil and other materials and has at least five hundred thousand dollars ($500,000 in annual gross revenue).

7. Defendants Norman Randy Collum, Dusty Collum and Jase Collum (collectively "Column Defendants") are all supervisors of Defendant Premier and supervised the Plaintiffs and other drivers.

8. Defendant Norman Randy Collum acts directly and/or indirectly in the interests of Defendant Premier in that:

   A. He determines pay for both Company Drivers and Owner-Operators;

   B. He has authority to control the schedule and conditions of Company Drivers and Owner-Operators job duties;

   C. He has supervisory capacity over Defendant Premier's personnel, including dispatchers, Company Drivers, and Owner-Operators;

   D. He has authority to hire and fire personnel of the Defendant Premier, including authority to end any agreement with an Owner-Operator currently employed with Defendant Premier; and

   E. He has authority to contract with third-party petroleum and gas companies for service contracts that are then carried out by the Company Drivers and Owner-Operators of Defendant Premier.

9. Defendant Dusty Collum acts directly and/or indirectly in the interests of Defendant Premier in that:

A. He has authority to contract with third-party petroleum and gas companies for service contracts that are then carried out by the Company Drivers and Owner-Operators of Defendant Premier;

B. He has supervisory capacity over Defendant Premier's personnel, including dispatchers, Company Drivers, and Owner-Operators;

C. He has authority to hire personnel, including authority to end any agreement with an Owner-Operator currently employed with Defendant Premier; and

D. He has authority to coordinate Defendant Premier's Owner-Operators to execute the terms of the service contracts between Defendant Premier and third-party petroleum and gas companies.

10. Defendant Jase Collum acts directly and/or indirectly in the interests of Defendant Premier in that:

A. He has authority to bid on contracts on the behalf of Defendant Premier with third-party petroleum and gas companies for agreements to transport crude oil;

B. He has supervisory capacity over drivers (including Plaintiffs and those similarly situated); and

C. Executes contracts between Defendant Premier and Owner-Operators.

**Plaintiff Wills Purchases Vehicle from Defendant Premier**

11. Around March 2019, Plaintiff Wills was told by Virgil Brewington (Field Supervisor), Defendant Dusty Collum, and Defendant Jase Collum that Plaintiff

4

Wills could purchase a semi-truck from Defendant Premier to be used to transport crude oil on behalf of Defendant Premier.

12. Mr. Brewington, Defendant Dusty Collum, and Defendant Jase Collum told Plaintiff Wills that he would be purchasing the vehicle with financing offered through Defendant Premier and that each payment made to Defendant Premier would be for the purchase of the vehicle.

13. Plaintiff Wills explained that he intended to purchase a vehicle so that he (Plaintiff Wills) could work for himself and use the vehicle he purchased to perform services for Defendant and also other entities who contracted with truckers to haul products.

14. Mr. Brewington, on behalf of the Defendants, specifically told Plaintiff Wills that because Plaintiff was purchasing the vehicle, he (Plaintiff Wills) was the owner of the vehicle and, thus, would be allowed to use and operate the vehicle as Plaintiff Wills chose, including by using the vehicle to perform services for other entities.

15. On March 29, 2019, Plaintiff Wills and Defendant entered into a written contract titled "Security Agreement" (hereinafter "Wills Security Agreement"), along with a "Promissory Note" which provided in part that Plaintiff borrowed from Defendant funds necessary for Plaintiff to complete purchase of the vehicle known as "2012 Peterbilt" with a VIN ending in 0721.

16. According to the Promissory Note:

    A. Defendant Premier sold the vehicle to Plaintiff Wills for the amount of $101,426.43;

    B.    The interest rate charged was twenty percent (20%) with an interest rate of thirty percent (30%) upon default and/or maturity of the loan;

    C.    The loan shall be payable in 78 bi-weekly installments of $1,734.07 each, beginning on May 3, 2019, and on every other Friday thereafter, until payment of all principle and interests;

    D.    A fee of ten percent (10%) of the install payment for each installment payment paid after the due date;

    E.    Defendant Premier has the right to cause the whole principle sum and interest to become due and payable at once, without notice, if any payment is more than ten (10) days past due.

17. According to the Defendants' representations and the documents, Plaintiff Wills purchased the vehicle and was, thus, the owner of such vehicle (sometimes referred to as "Equipment").

18. Defendants refused to provide Plaintiff Wills with a copy of the title, refused to transfer the title (to Plaintiff's knowledge and belief) and refused to provide other documents showing Plaintiff Wills was the owner of the vehicle.

### Plaintiff Beasley Purchases Vehicle from Defendant Premier

19. On May 3, 2019, Plaintiff Beasley and Defendant Premier entered into a written contract titled "Security Agreement" (hereinafter "Beasley Security Agreement"), along with a "Promissory Note", which provided in part that Plaintiff borrowed from Defendant funds necessary for Plaintiff to complete purchase of the vehicle known

as "2006 Peterbilt" with a VIN ending in 5445. Defendant charged an interest rate of twenty percent (20%) on the loan.

20. According to the Promissory Note:

   A. Defendant Premier sold the vehicle to Plaintiff Beasley for the amount of $98,000;

   B. The interest rate charged was twenty percent (20%) with an interest rate of thirty percent (30%) upon default and/or maturity of the loan;

   C. The loan shall be payable in 78 bi-weekly installments of $1,675.49 each, beginning on June 7, 2019, and on every other Friday thereafter, until payment of all principle and interests;

   D. A fee of ten percent (10%) of the install payment for each installment payment paid after the due date;

   E. Defendant Premier has the right to cause the whole principle sum and interest to become due and payable at once, without notice, if any payment is more than ten (10) days past due.

21. Defendants refused to provide Plaintiff Beasley with a copy of the title, refused to transfer the title (to Plaintiff's knowledge and belief) and refused to provide other documents showing Plaintiff Beasley was the owner of the vehicle.

## Defendant Premier Violated Truth-in-Leasing Regulations

22. As the owners of the vehicles described above, Plaintiffs Wills and Beasley entered into Agreements[1] with Defendant Premier which were subject to the requirements of the Truth-in-Leasing Regulations (hereinafter "Wills Lease Agreement" and "Beasley Lease Agreement").

23. Plaintiff Wills entered into the Wills Lease Agreement around March 30, 2019.

24. Plaintiff Beasley entered into the Beasley Lease Agreement around May 3, 2019.

25. According to the Wills and Beasley Lease Agreements, such agreements were:

    A. made between Defendant Premier, as the "Carrier" and Plaintiff Wills and Beasley, as the "Contractor". Defendant Premier is described as an "authorized motor carrier";

    B. made "pursuant to the federal leasing regulations under 49 C.F.R. Part 376";

    C. provide that during the term of the Contractor Agreement, the Contractor shall provide Defendant Premier (Carrier) "professional truck driving services, other incidental transportation related services, and the use of the equipment . . . ."

    D. provide that "upon taking possession of the Equipment from CONTRACTOR, CARRIER shall furnish to CONTRACTOR a receipt for Equipment, which shall constitute the receipt required by 49 C.F.R. § 376.11(b).

---

[1] Each agreement was titled "Premier Trading and Transportation LLC Independent Contractor Agreement".

26. The Wills and Beasley Lease Agreements constituted a Lease which was required to include specific terms and conditions as set out in 49 C.F.R. § 376.12.

27. The Wills and Beasley Lease Agreements violated the MCA and Truth-In-Leasing requirements including by:

   A. Failing to specify that payment to Plaintiffs "shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of" Defendant Premier;

   B. Failing to clearly state on the face of the lease or an attached addendum the amount to be paid by Defendant Premier (Carrier) for equipment and drivers' services;

   C. Failure to deliver the lease or addendum with the specification described in Para. 23(C) to Plaintiffs prior to the commencement of any trip in the service of Defendant Premier;

   D. Failure to clearly specify the manner in which a receipt will be given to Defendant Premier by Plaintiffs when Plaintiffs retake possession of the equipment upon termination of the lease agreement;

   E. Fail to clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, detention, and accessorial charges, among other charges and fees. Specifically, the Agreement does not clearly indicate who will be responsible for these and similar charges/fees when the Contractor (Plaintiffs Wills and/or Beasley) provides the required

documentation. Nor does the Agreement clearly state who will be responsible for the unused portions of such items.

 F. Fail to clearly specify the conditions under which deductions for cargo and property damage may be made from Plaintiffs' settlements;

 G. Fail to specify that the Defendant Premier must provide Plaintiffs with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to Plaintiffs;

 H. Fail to limit Defendant Premier's authorization to deduct escrow funds to those obligations incurred by Plaintiff Wills which have been previously specified in the lease (Agreement);

28. In addition, Defendant Premier violated the Truth-In-Leasing regulations by, among other things:

 A. Requiring Plaintiffs to purchase fuel on Defendant's fuel card (thereby limiting the locations where fuel can be purchased), then reimbursing Defendants for the price of such fuel;

 B. Requiring Plaintiffs to purchase Defendant Premier's services to repair Plaintiffs' vehicles.

 C. Refusing to allow Plaintiffs to use their vehicles to perform services with other entities and insisting that Plaintiffs contract only with Defendant Premier in leasing their vehicles;

D. Failed to provide copies of those documents which are necessary to determine the validity of any charge applied as a charge-back and deducted from Plaintiffs' compensation;

E. Defendant Premier required Plaintiffs to obtain the financing for Plaintiffs' vehicles through Defendant Premier and to purchase a vehicle only through Defendant Premier rather than a third-party financing company and/or dealer;

F. Defendant Premier required Plaintiffs to purchase insurance for their vehicles through Defendant Premier and the amount was deducted through Plaintiff's paycheck; and

G. Required Plaintiffs to purchase Defendant's services for cleaning spills in Plaintiffs' vehicles, by requiring Plaintiffs to report such spills to Defendant when Defendant Premier would then deduct the amount of such "services" from Plaintiffs' compensation;

**Defendants Engaged in Deceit, Fraud and Conversion**

29. Around May or June 2020, Defendant Premier ordered Plaintiff Wills to repair his "front main seal", even though the repair was not necessary by Department of Transportation standards. Defendant Premier told Plaintiff Wills that he could not perform any services for Defendant Premier unless he allowed Defendant Premier to repair the "front main seal." Plaintiff Wills agreed, believing he had no choice, and allowed Defendant Premier to take the vehicle for the sole purpose of working on the "front main seal." However, without Plaintiff Will's permission, Defendant

Premier worked on other parts of the vehicle and thereafter charged Plaintiff Wills approximately twelve thousand dollars for "repairs" that were not requested, needed nor authorized by Plaintiff Wills. As a result, Mr. Wills was charged approximately $12,000 to $13,000 in unnecessary repair fees.

30. After Plaintiffs purchased vehicles from Defendants, and after Defendants told Plaintiffs they must provide services exclusively to Defendants, the Defendants began to reduce the number of jobs assigned to each Plaintiff.

31. In addition, the Defendants routinely withheld significant portions of Plaintiffs' compensation as "charge backs" which resulted a significant reduction to Plaintiffs' income.

32. As a result, the Defendants' actions described above, Paras. 30 and 31, the Plaintiffs' income fell to an amount that made it difficult and/or impossible to pay the full monthly payments for the vehicles they purchased.

33. When the Plaintiffs were unable to pay their bills, the Defendants demanded immediate payment of the outstanding principal.

34. Plaintiff Beasley contacted the Defendant and asked for additional work so that he could earn enough money to keep paying for his vehicle. In response, Plaintiff Beasley was told he would not be assigned more work, that he would be required to pay the full amount of the loan immediate, but that Defendants would forgive the loan if Plaintiff Beasley transferred ownership of the vehicle back to Defendant Premier.

35. Similarly, When Plaintiff Wills was unable to pay the monthly payments on the loan for his vehicle – which was a result of Defendants' conduct – Defendants demanded immediate payment of the full amount of the loan unless Plaintiff Wills transferred ownership of the vehicle to the Defendants.

36. As a direct result of the Defendants' conduct, the Plaintiffs have actual damages.

37. The Plaintiffs seek, on behalf of themselves and those similarly situated:

    A. the damages incurred from the Defendants' conduct;

    B. declaratory relief in the form of an order or judgment finding the Lease Agreements in violation of the Truth-in-Leasing regulations;

    C. Injunctive relief preventing Defendants from continuing to use and/or enforce such unlawful agreements and preventing Defendants from continuing their fraudulent and deceitful conduct.

38. Plaintiffs also seek an award of attorney fees and costs.

## **COUNT I**

Plaintiffs incorporate the above paragraphs and further allege:

39. This Count goes to Defendant Premier only.

40. Defendant Premier's failure to comply with the written contracts entered into with the Plaintiffs resulted in a breach of such contracts in violation of Oklahoma law.

41. Under this Count Plaintiffs are entitled to all remuneration and funds owed, as well as recovery of all other losses resulting from the breach.

42. Plaintiffs are also entitled to an award of attorney fees (and costs) because Plaintiffs seek recovery for labor and/or services rendered under the contracts.

## COUNT II

Plaintiffs incorporate the above paragraphs and further allege:

43. This Count goes to Defendant Premier only.

44. The contracts drafted by Defendant Premier, and Defendant Premier's conduct with respect to the Plaintiffs, violate the Truth-in-Leasing regulations.

45. Under this Count the Plaintiffs are entitled to their damages along with injunctive relief, declaratory relief, attorney fees and costs.

## COUNT III

Plaintiffs incorporate the above paragraphs and further allege:

46. This Count goes to all Defendants.

47. Defendants' conduct, as described above, meet the elements of the torts of fraud, deceit and conversion.

48. Under such torts the Plaintiffs are entitled to recover their actual damages, including compensatory and punitive (the latter as a result of the willfulness and/or negligence of Defendants' conduct).

## COLLECTIVE/CLASS CERTIFICATION

49. To Plaintiffs' knowledge there are at least ten to twenty employees of Defendants who, like Plaintiffs, have entered into contracts with Defendant that violate the Truth-In-Leasing regulations.

50. To Plaintiffs' knowledge, Defendant has also made false representations to others, requiring them to work only for Defendants, then squeezed them out of income in order to defraud them out of the vehicles they purchased.

51. The actions described above constitute:

    A.   violation of the Truth-in-Leasing regulations; and ;

    B.   the torts of fraud, deceit and conversion.

52. The class are specifically knowable and compromise of:

    A.   Others who performed as drivers and entered into contracts similar to the Plaintiffs which violate the Truth-in-Leasing regulations; and/or

    B.   Others to whom Defendants made the same or similar misrepresentations regarding their income and ability to work for others, and for whom Defendant withheld the ability to earn income in order to pressure such persons to transfer ownership of the vehicles back to Defendants.

53. The classes are sufficiently numerous that it is impractical to name each member of the class individually and such that a class action is most economical, expeditious and just way of managing this claim.

54. There are questions of law or fact common to the class, including whether the employees worked hours and earned wages for which they were not compensated.

55. Plaintiff, as the class representative, shares the same questions of law and fact with other class members and will fairly and adequately protect the interests of the class.

56. The only factual matter different between the collective plaintiffs would be the of damages owed.

## PRAYER

**WHEREFORE**, Plaintiffs, on behalf of themselves and others similarly situated, respectfully requests this Court enter judgment in his favor and against the Defendants and

grant them all compensatory damages suffered, together with punitive damages, liquidated damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper in an amount in excess of that required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

**RESPECTFULLY SUBMITTED THIS 22nd DAY OF JUNE 2021.**

HAMMONS, HURST & ASSOC.

<u>Amber L. Hurst</u>
Mark Hammons, OBA No. 3748
Amber L. Hurst, OBA No. 21231
Brandon D. Roberts, OBA No. 34012
325 Dean A. McGee Ave.
Oklahoma City, Oklahoma 73102
(405) 235-6100
 (405) 235-6111 (fax)
brandon@hammonslaw.com
*Counsel for Plaintiff*
ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of the Notices of Electronic Filing generated by CM/ECF.

Chris S. Thrutchley, OBA No. 15859
John D. Russell, OBA No. 13343
Barrett L. Powers, OBA No. 32485
GABLEGOTWALS
110 N Elgin Ave., Ste. 200
Tulsa, Oklahoma 74120-1495
(918) 595-4800
(918) 595-4990 (fax)
cthrutchley@gablelaw.com
jrussell@gablelaw.com
bpowers@gablelaw.com
*Counsel for Defendants*

                                                                                     s/Amber L. Hurst