## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LACORAEY S. WILLS et al., on behalf of themselves and others similarly situated,** | ) ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )  **Case No. CIV-21-246-G** |
| | ) |
| **PREMIER TRADING AND TRANSPORTATION, LLC et al.** | ) ) ) |
| | ) |
| **Defendants.** | ) |

## <u>ORDER</u>

Now before the Court is a Motion to Dismiss (Doc. No. 14) jointly filed by Defendant Premier Trading and Transportation, LLC ("Premier") and by Defendants Norman Randy Collum, Dusty Collum, and Jase Collum (the "Individual Defendants"). Plaintiffs LaCoraey S. Wills and Albert L. Beasley have responded (Doc. No. 19), and Defendants have filed a Reply (Doc. No. 22).

I.    *Plaintiffs' Factual Allegations*

Plaintiffs' Amended Complaint (Doc. No. 10) raises one federal and several state-law claims arising from their business relationship with Premier and the Individual Defendants. Plaintiffs allege, on behalf of themselves and a putative class:

Plaintiffs are commercial truck drivers who reside in Oklahoma. *Id.* ¶ 1. Premier is a trucking company that hauls materials such as petroleum and crude oil. *Id.* ¶¶ 5-6. The Individual Defendants are supervisory employees for Premier and act in the interests of Premier. *Id.* ¶¶ 7-10.

In March of 2019, Plaintiff Wills entered into a Security Agreement and Promissory Note with Premier, whereby Plaintiff Wills borrowed the necessary funds from Premier to purchase a commercial truck (the "2012 Peterbilt") from Premier for the price of $101,426.43.  *Id.* ¶¶ 11-17.  In May of 2019, Plaintiff Beasley likewise financed and purchased a commercial truck (the "2006 Peterbilt") from Premier via a Security Agreement and Promissory Note, for the price of $98,000.00.  *Id.* ¶¶ 19-20.

As the owners of these vehicles, each Plaintiff also entered into a lease agreement, titled "Premier Trading and Transportation LLC Independent Contractor Agreement," with Premier.  *Id.* ¶¶ 22-25.  Plaintiffs then provided trucking services to Premier as owner-operators pursuant to these lease agreements.  *Id.* ¶¶ 25(C), 30-31.

After Plaintiffs purchased the vehicles, "Defendants began to reduce the number of jobs assigned to each Plaintiff."  *Id.* ¶ 30.  Defendants also "routinely withheld significant portions of Plaintiffs' compensation as 'charge backs' which resulted [in] a significant reduction in Plaintiffs' income."  *Id.* ¶ 31.  After Plaintiffs' incomes fell and they were unable to make their payments for the purchased vehicles, "Defendants demanded immediate payment of the outstanding principal" on the purchase agreements.  *Id.* ¶ 33.  Defendants later offered to forgive the loans if Plaintiffs would transfer ownership of the vehicles back to Premier/Defendants.  *Id.* ¶¶ 34-35.

## II.  *Applicable Standard*

Citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants seek dismissal of Plaintiffs' claims for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In analyzing a motion to dismiss under Rule 12(b)(6),

the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.   *Defendants' Motion to Dismiss*

### A.  *Plaintiffs' Claim of Violation of Federal Truth-in-Leasing Regulations*

Plaintiffs' federal claim is raised against Premier and is premised upon the vehicle lease agreements (or "IC Agreements") and alleged violations of the federal Truth-in-Leasing Regulations promulgated by the Department of Transportation's Federal Motor Carrier Safety Administration.  *See* Am. Compl. ¶¶ 22-28, 43-45; 49 C.F.R. pt. 376; *see*

3

*also* 49 U.S.C. § 14102; *Fox v. TransAm Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016).

The parties do not dispute that, as an "authorized carrier," Premier is subject to the Truth-in-Leasing Regulations (the "Regulations").   *See* 49 C.F.R. § 376.2(a).   These Regulations "protect independent truckers from motor carriers' abusive leasing practices." *Fox*, 839 F.3d at 1211.   They prescribe that "motor carriers who do not own their equipment," such as Premier, "must enter into written lease agreements with owner-operators" such as Plaintiffs.   *Owner-Operator Indep. Drivers Ass'n v. Rocor Int'l, Inc.*, No. CIV-98-846-L, 2000 WL 35512897, at *2 (W.D. Okla. July 19, 2000) (citing 49 C.F.R. § 376.11(a)).   The requirements for such lease agreements are laid out in 49 C.F.R. § 376.12.   *Id.*; *see also Brinker v. Namcheck*, 577 F. Supp. 2d 1052, 1060 (W.D. Wis. 2008) ("49 C.F.R. § 376.12 requires that federally regulated motor carriers include certain provisions in their leases with independent owner-operators and adhere to and perform these provisions." (alterations and internal quotation marks omitted)).

### 1.  Damages

Defendants first argue that Plaintiffs' federal claim should be dismissed due to Plaintiffs' failure to allege any financial harm resulting from the alleged violations of the Regulations.   *See* Defs.' Mot. at 20 (citing 49 U.S.C. § 14704(a)(2)).   Defendants assert that Plaintiffs must plead not only that the Regulations were violated but also that "'the violation caused an injury'" and that the Amended Complaint fails to so plead.   *Id.* at 21 (quoting *Cunningham v. Lund Trucking Co.*, 662 F. Supp. 2d 1262, 1272 (D. Or. 2009)).

4

Plaintiffs present two distinct theories of liability regarding the Regulations.  First, Plaintiffs allege in their "Content Claim" that the written IC Agreements were drafted by Premier and failed on their face to contain the regulatory language required to be included in such leases pursuant to 49 C.F.R. § 376.12.  *See* Am. Compl. ¶¶ 27(A)-(B), (D)-(F), 44.[1] As to this Content Claim, the Court agrees with Defendants that there is no allegation presented that plausibly shows any monetary harm arising from a failure of the IC Agreements to conform to the regulatory requirements.  Accordingly, Defendants' Motion shall be granted insofar as Plaintiffs shall be permitted to seek only declaratory and injunctive relief with respect to their claim that the IC Agreements, on their face, deviated from the requirements prescribed for lease agreements under § 376.12.  *See* Am. Compl. ¶¶ 26, 27(A)-(B), (D)-(F), 37(B)-(C), 45; *see also* Pls.' Resp. at 15; 49 U.S.C. § 14704(a)(1) (providing a right to injunctive relief for violation of the Regulations).

Second, Plaintiffs allege that Premier failed to "adhere[] to and perform[]" certain of the Regulations.  49 C.F.R. § 376.12; *see* Am. Compl. ¶¶ 28(A)-(G), 37(A), 37(C), 44. Having reviewed the pleading, the Court finds that dismissal of this "Compliance Claim" is not warranted.  Although Plaintiffs' allegations of monetary injuries incurred are meager, they are sufficient to support a plausible inference for purposes of Rule 12(b)(6) that Premier's violation of the Regulations caused Plaintiffs to incur some actual damages.  *See, e.g.*, Am. Compl. ¶ 28(A), (E)-(G) (alleging that Plaintiffs were required to make purchases and obtain services from Premier in violation of the Regulations). Thus, at this initial

---

[1] Plaintiffs have expressly withdrawn the allegations presented in Paragraphs 27(C), 27(G), and 27(H).  *See* Pls.' Resp. at 24, 25.

pleading stage Plaintiffs have adequately alleged that they were financially harmed by Premier's failure to adhere to the Regulations to seek monetary damages as well as other relief.  *See* 49 U.S.C. § 14704(a)(2) ("A carrier . . . providing transportation . . . is liable for damages sustained by a person as a result of an act or omission of that carrier . . . in violation of [49 U.S.C. §§ 13101-14916]."); *see also Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 886 (C.D. Ill. 2017).

### 2. *Plaintiffs' Content Claim*

#### a. *49 C.F.R. § 376.12(f)*

Plaintiffs allege that the IC Agreements facially violated the Regulations by "[f]ailing to specify that payment to Plaintiffs shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of Defendant Premier."  Am. Compl. ¶ 27(A) (internal quotation marks omitted).

The applicable Regulation prescribes that a lease subject to the truth-in-leasing requirements "shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier."  49 C.F.R. § 376.12(f).  The IC Agreements provide as follows:

> CARRIER shall settle with CONTRACTOR with respect to services provided under this Agreement within 15 calendar days after CONTRACTOR's submission, in proper form, of those documents necessary for CARRIER to secure payment from its customers . . . ."

IC Agt. § 4 (Doc. Nos. 14-3, 14-4).[2]

---

[2] Defendants attached the relevant contracts as exhibits to their Motion, and Plaintiffs relied upon those documents in turn in their Response.  The Court may consider on a motion to dismiss "documents referred to in the complaint" where, as here, "the documents are

Defendants dispute that Plaintiffs have plausibly pleaded a failure to include the relevant 15-day payment requirement, relying upon the IC Agreements' express requirement that Premier "shall settle with" Plaintiffs "within 15 calendar days." According to Plaintiffs, however, this deviation from the word "payment" is not merely a matter of semantics: "to 'settle' is to determine the amount of compensation owed to Plaintiffs[,] which is different from actually paying that compensation." Pls.' Resp. at 20.

The contracts' use of "settlement" and "settle with," as used elsewhere in the IC Agreements, appears substantively different and is referred to separately from their use of the term "payment." *See, e.g.*, IC Agt. §§ 4 ("CARRIER shall have the right, but not as a condition of settlement and payment, to review . . . ."), 5 ("CARRIER shall deduct from CONTRACTOR's compensation, at the time of payment to or settlement with CONTRACTOR, . . . ."). It can reasonably be inferred from the current record that Premier considered settlement and making payment to be two different acts and that only the former was subject to the 15-day requirement. Therefore, having considered the parties' arguments, the Court finds that Plaintiffs have plausibly pleaded the IC Agreements' lack of compliance with the "payment" timing requirement of 49 C.F.R. § 376.12(f).

### b. 49 C.F.R. § 376.12(d)

Plaintiffs next allege that the IC Agreements "[f]ail to clearly state on the face of the lease or an attached addendum the amount to be paid by Defendant Premier . . . for equipment and drivers' services." Am. Compl. ¶ 27(B); *see* 49 C.F.R. § 376.12(d) ("The

---

central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease.").

Defendants argue that Plaintiffs fail to state a plausible claim because the IC Agreements state that "compensation shall be set forth as in *Appendix A*" and Appendix A states: "See Rate Sheet Provided."  IC Agt. § 3 & app. A.  As noted by Plaintiffs, however, such separately provided rate sheets do not, by the contracts' own terms, constitute part of the IC Agreements and are not either "on the face of the lease" or "attached" to that lease as required by § 376.12(d).  49 C.F.R. § 376.12(d); *see* Pls.' Resp. at 20-22; IC Agt. § 26 (prescribing that "[t]he Agreement (including the Appendices and any addendums) constitute[s] the entire agreement" between the parties).  Accordingly, this violation is sufficiently pleaded to state a claim.

### c. *49 C.F.R. § 376.12(e): Owner's Receipt*

Section 376.12(e) of the Regulations prescribes:

> The lease shall clearly specify the manner in which a receipt will be given to the authorized carrier by the equipment owner when the latter retakes possession of the equipment upon termination of the lease agreement, if a receipt is required at all by the lease.

49 C.F.R. § 376.12(e); *see also id.* § 376.11(b)(2) (stating that, "if the lease agreement requires a receipt," a receipt "specifically identifying the equipment to be leased and stating the date and time of day possession is transferred" "shall be given in accordance with the terms of the lease agreement" "[w]hen possession of the equipment by the authorized carrier ends").

Plaintiffs allege that the IC Agreements fail to "clearly specify" the manner in which Plaintiffs are required to give a receipt to Premier when Plaintiffs retake their equipment. Am. Compl. ¶ 27(D). Defendants argue that this regulatory requirement is fulfilled by Section 1 of the IC Agreements, which reads:

> Upon taking possession of the Equipment from CONTRACTOR, CARRIER shall furnish to CONTRACTOR a receipt for Equipment, which shall constitute the receipt required by 49 C.F.R. § 376.11(b). Upon termination of this Agreement, CONTRACTOR shall execute a similar receipt for equipment as the written receipt for the return of the Equipment by CARRIER to CONTRACTOR[.]

IC Agt. § 1.

The contract provision quoted above imposes a receipt requirement but does not directly speak to "the manner" in which the receipts will be delivered by Plaintiffs to Premier. The Court is skeptical that Plaintiffs ultimately will be able to show any significance to this omission, but, viewing the factual allegations in the light most favorable to Plaintiff, finds that the Amended Complaint plausibly alleges a failure to comply with 49 C.F.R. § 376.12(e).[3]

#### d. 49 C.F.R. § 376.12(e): Costs

Plaintiffs allege noncompliance with 49 C.F.R. § 376.12(e), which directs that "[t]he lease shall clearly specify the responsibility of each party with respect to the cost of fuel,

---

[3] Plaintiffs additionally assert in their Response that they were improperly asked to sign the return receipts at the inception of the IC Agreements, rather than at termination, and have submitted affidavits in support of this assertion. The Court may not properly consider such affidavits or new factual allegations on a Rule 12(b)(6) motion. Further, the Amended Complaint alleges that the IC Agreements were facially noncompliant with 49 C.F.R. § 376.12(e); there is no allegation that Premier failed to adhere to the receipt requirement. *See* Am. Compl. ¶ 27(D).

fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items."  49 C.F.R. § 376.12(e); *see* Am. Compl. ¶ 27(E).  Defendants cite Sections 9(a) and 9(f) and Appendix A of the IC Agreements as fulfilling this lease requirement.  *See* Defs.' Mot. at 23; Defs.' Reply at 9.

Having reviewed the cited provisions, the Court agrees with Plaintiffs that the IC Agreements do not "clearly specify" the responsibility of each party with respect to, at a minimum, the cost of "any unused portions" of the identified items.  *See* IC Agt. § 9(a), (f) & app. A.  This aspect of the Content Claim therefore is adequately pleaded under Rule 12(b)(6).

### e.  *49 C.F.R. § 376.12(j)(3)*

The IC Agreements provide under "<u>CARGO CLAIMS</u>": "CONTRACTOR shall be liable for, and CARRIER shall charge back to CONTRACTOR, the amount up to the amount set forth in "CONTRACTOR's Indemnity Amount" . . . of each cargo claim, including but not limited to, delay, shortages, misdelivery, and any direct damage claim relating to lost, damaged or contaminated loads, arising out of, or in connection with CONTRACTOR's services."  IC Agt. § 10.

Plaintiffs claim that the IC Agreements violate 49 C.F.R. § 376.12(j)(3) because the above-quoted provision "[f]ails to clearly specify the conditions under which deductions for cargo and property damage may be made from Plaintiffs' settlements."  Am. Compl. ¶ 27(F); *see* 49 C.F.R. § 376.12(j)(3).  In particular, Plaintiffs argue that the phrase

"including but not limited to" is insufficient because "an exclusive list of all conditions under which deductions may be made" is required.  Pls.' Resp. at 24-25.

The Court concludes that this is an unreasonable construction of the 49 C.F.R. § 376.12(j)(3) specification requirement.  Plaintiffs cite no authority for the proposition that the lease agreement must set forth an exhaustive list of each and every possible reason for a deduction, and such a reading is not in accord with other courts' consideration of § 376.12(j)(3).  *See, e.g.*, *Luxama v. Ironbound Express, Inc.*, No. 11-2224, 2021 WL 1153145, at *21 (D.N.J. Mar. 26, 2021) (holding that a provision permitting the carrier to deduct "an amount sufficient to reimburse [the carrier] for . . . any loss of or damage to property or cargo" sufficiently complied with § 376.12(j)(3) (alteration omitted)); *Tayssoun Transp., Inc. v. Universal Am-Can, Ltd.*, No. Civ.A.04-1074, 2005 WL 1185811, at *18 (S.D. Tex. Apr. 20, 2005) (finding that phrase "unless negligence caused by contractor" did not render the cargo-claims term of the lease agreement inadequate under § 376.12(j)(3)).  Consequently, Plaintiffs cannot plausibly establish that this provision is unlawful, and this aspect of the Content Claim shall be dismissed.

### 3.  *Plaintiffs' Compliance Claim*

#### a.  *49 C.F.R. § 376.12(i)*

Plaintiffs allege that Premier "required Plaintiffs to purchase fuel on [Premier's] fuel card . . . , then reimburs[e] Defendants for the price of such fuel."  Am. Compl. ¶ 28(A).  Plaintiffs also allege that Premier required Plaintiffs to purchase and obtain financing for their vehicles "only through [Premier]."  *Id.* ¶ 28(E).  And Plaintiffs allege

that they were required to purchase Premier's services for certain repairs and for cleaning spills in their vehicles.  *See id.* ¶¶ 28(B), (G); Pls.' Resp. at 26.

While Defendants argue that the Regulations do not prohibit a carrier from contracting for the purchase of such products and services, the Court agrees that Plaintiffs' allegation that they could "only" conduct certain transactions with Premier sufficiently pleads Premier's failure to comply with 49 C.F.R. § 376.12(i), which states: "The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." 49 C.F.R. § 376.12(i); *see* Pls.' Resp. at 25-26; *see also Fox*, 839 F.3d at 1215 ("Truckers . . . must be free to purchase products, equipment, and services from someone other than the carrier . . . .").

### b.  Paragraph 28(C)

The Amended Complaint alleges that Premier "[r]efus[ed] to allow Plaintiffs to use their vehicles to perform services with other entities and insist[ed] that Plaintiffs contract only with Defendant Premier in leasing their vehicles."  Am. Compl. ¶ 28(C).  In their Response, Plaintiffs clarify that "their vehicles" is intended to reference trucks other than the 2006 Peterbilt and the 2012 Peterbilt subject to the IC Agreements.  Pls.' Resp. at 26-27.  Plaintiffs also explain that this allegation of liability is based upon a noncompete clause

in the IC Agreements but concede that the clause "does not necessarily violate" the Regulations. *Id.* at 27 (citing IC Agt. § 20(b)).[4]

Accordingly, Defendants' Motion is granted as to the aspect of the Compliance Claim raised in Paragraph 28(C).

### c.  49 C.F.R. § 376.12(h)

Plaintiffs allege that Premier failed to provide the necessary documentation "to determine the validity of any charge applied as a charge-back." Am. Compl. ¶ 28(D). This allegation sufficiently pleads, at the Rule 12(b)(6) stage, that Premier failed to adhere and comply with the Regulations. *See* 49 C.F.R. § 376.12(h) ("The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.").

### d.  Paragraph 28(F) of the Pleading

Finally, the Amended Complaint challenges Premier's requirement that Plaintiffs purchase insurance for their vehicles through Premier and have the cost deducted from Plaintiffs' paychecks. *See* Am. Compl. ¶ 28(F). Defendants argue that it is mandatory for Premier to maintain such a policy and that "[c]ourts have been clear that it is permissible for carriers to pass on the cost of such insurance coverage to owner-operators." Defs.' Mot. at 29 (citing 49 C.F.R. § 387.7; *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 615 F.3d 790, 794 (7th Cir. 2010)). Plaintiffs offer no counter to these authorities, and so this aspect of the Compliance Claim shall be dismissed.

---

[4] Plaintiffs also reference amendment of their pleading, asserting that the noncompete clause violates Oklahoma law, *see* Pls.' Resp. at 27. Plaintiffs' request to amend is addressed *infra*.

### B. *Plaintiffs' Claim for Breach of Contract*

Under Oklahoma law, to recover under a breach-of-contract theory a plaintiff must show: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). To any extent Plaintiffs are claiming a breach of the Security Agreements, the Court agrees with Defendants' argument (to which Plaintiffs offered no objection) that no such breach can plausibly be found from the allegations of the Amended Complaint, and any such claim shall be dismissed for failure to state a claim upon which relief can be granted. *See* Defs.' Mot. at 9-11; Defs.' Reply at 2.

Plaintiffs' Response instead focuses upon the IC Agreements, contending that Premier breached those IC Agreements under Oklahoma law by: "requir[ing] Plaintiff Wills to have his vehicle serviced only through Defendant Premier," "t[elling] Plaintiffs they could provide services exclusively to Defendants," "withh[olding] portions of Plaintiff[s'] compensation as charge-backs," and "reduc[ing] the number of jobs assigned to Plaintiff[s]," all of which resulted in a reduction in income and financial harm to Plaintiffs. Pls.' Resp. at 8-10 (citing Am. Compl. ¶¶ 22-25, 29-32, 40-41). Although Defendants thoroughly addressed Plaintiffs' allegations regarding the IC Agreements for purposes of Plaintiffs' federal claim, they have not offered specific bases for dismissal of a state-law breach of contract claim premised upon those agreements. Taking the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately alleged the contracts, the breach of those contracts, and damages therefrom, and dismissal under Rule 12(b)(6) is not warranted.

C.  *Plaintiffs' Claims for Fraud and Deceit*[5]

Plaintiffs bring fraud and deceit claims against both Premier and the Individual Defendants.  Defendants object both that Plaintiffs have failed to plead these claims with the requisite particularity, as required by Federal Rule of Civil Procedure 9(b), and that they have failed to state a claim upon which relief can be granted, such that dismissal is warranted under Rule 12(b)(6).

"In alleging fraud," "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  A complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks omitted).  "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based."  *Id.* (alteration, omission, and internal quotation marks omitted).

To state a fraud claim under Oklahoma law, a plaintiff must set forth particularized allegations establishing: "(1) a false material misrepresentation, (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, (3) with the intention that it be acted upon, and (4) which is relied on by the other

---

[5] "The basic elements of common law fraud and deceit are identical under Oklahoma law," and courts generally treat these tort claims as synonymous, evaluating them together as a fraud claim.  *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1111 (N.D. Okla. 2003).  "The tort of fraud or deceit provides a remedy to a person who suffers damages due to his reliance upon another's willful misstatement of fact."  *Cooper v. Parker-Hughey*, 894 P.2d 1096, 1100 (Okla. 1995).

party to his (or her) own detriment." *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009).

In support, Plaintiffs first allege:

- Virgil Brewington, a Premier field supervisor, told Plaintiff Wills "on behalf of the Defendants" that Plaintiff Wills would be able to use and operate the 2012 Peterbilt purchased from Premier "as Plaintiff Wills chose," "including . . . to perform services for other entities."

Am. Compl. ¶¶ 11-14.

Defendants first argue that these claims fail to sufficiently allege any fraudulent or deceitful conduct on the part of the Individual Defendants. The Court finds that this objection is well taken. Plaintiffs fail to plausibly associate any Individual Defendant with specific false representation by Mr. Brewington simply by alleging that they also worked for Premier. Although Plaintiffs argue that they should be permitted to engage in discovery as to Mr. Brewington, "reliance on a need for discovery . . . does not excuse [a] plaintiff from adequately pleading her case under *Twombly* in the first place." *Hammonds v. Bos. Sci., Inc.*, No. CIV-11-663-HE, 2011 WL 13177632, at *2 (W.D. Okla. Aug. 8, 2011). Absent any well-pleaded factual basis for a fraud claim based upon the purchase from Premier to lie against any of the Individual Defendants, this claim shall be dismissed as to those defendants pursuant to Rule 12(b)(6).

As for a fraud claim against Premier, however, the Court finds that Plaintiffs have sufficiently alleged that Plaintiff Wills was falsely told by a supervisor for Premier that Plaintiff Wills would be able to use his truck to work with other entities, with the intention that Plaintiff Wills purchase the vehicle from Premier, and that Plaintiff Wills did purchase

the truck in March 2019 with that understanding. *See* Am. Compl. ¶¶ 13-15. This claim

is therefore not subject to dismissal at this preliminary stage of litigation.

Next, Plaintiffs allege:

- Around May or June 2020, Premier ordered Plaintiff Wills to repair his "front main seal," even though the repair was not necessary by DOT standards. Premier told Plaintiff Wills that he could not perform any services for Premier unless he allowed Premier to repair the "front main seal." Plaintiff Wills agreed, believing he had no choice, and allowed Premier to take the vehicle for the sole purpose of working on the "front main seal." Without Plaintiff Wills' permission, Premier worked on other parts of the vehicle and thereafter charged Plaintiff Wills approximately $12,000 for "repairs" that were not requested, needed, or authorized by Plaintiff Wills. As a result, Plaintiff Wills was charged approximately $12,000 to $13,000 in unnecessary repair fees.

Am. Compl. ¶ 29.

Again, this allegation does not sufficiently implicate the Individual Defendants to

maintain a fraud claim against any of them. *Cf. U.S. ex rel. Dillahunty v. Chromalloy*

*Okla.*, No. CIV-08-944-L, 2009 WL 3837294, at *4 (W.D. Okla. Nov. 16, 2009) ("Because

[the plaintiff] fails to differentiate between and among the defendants, the defendants do

not individually have fair notice of the claims against them or the factual basis for those

claims."). Further, as to Premier, this claim fails to plausibly show that any statement

regarding the repairs was either "known to be false" at the time it was made or "made

recklessly without knowledge of the truth." *Bowman*, 212 P.3d at 1218. "[A]n intention

not to perform under an agreement cannot be established solely by proof of

nonperformance." *In re Hedman*, No. 17-11035, 2018 WL 3241065, at *11 (Bankr. N.D.

Okla. July 2, 2018) (omission and internal quotation marks omitted). The claim also fails

to particularly allege the "place . . . of the allegedly false representation." *Koch*, 203 F.3d

at 1236; *see also RMD, LLC v. Nitto Ams., Inc.*, No. 09-2056, 2009 WL 10689046, at *4 (D. Kan. Nov. 17, 2009) (noting that a fraud claim "must set out the who, what, where, and when of the alleged fraud" (internal quotation marks omitted)).   This claim must be dismissed pursuant to Rules 9(b) and 12(b)(6).

Finally, Plaintiffs allege:

- After Plaintiffs purchased vehicles from Defendants, and after Defendants told Plaintiffs they must provide services exclusively to Defendants, Defendants began to reduce the number of jobs assigned to each Plaintiff.  In addition, Defendants routinely withheld significant portions of Plaintiffs' compensation as "charge backs" which resulted a significant reduction to Plaintiffs' income.  As a result of these reductions and chargebacks, Plaintiffs' income fell to an amount that made it difficult and/or impossible to pay the full monthly payments for the vehicles they purchased.  When Plaintiffs were unable to pay their bills, Defendants demanded immediate payment of the outstanding principal.

Am. Compl. ¶¶ 30-33.

This allegation fails to raise any right to relief above the speculative level as to either Premier or the Individual Defendants.  To the extent any misrepresentations are alleged to have been made, they are described in vague terms, with no place or definite time frame, and they fail to sufficiently ""set forth the . . . contents of the false representation[s]" or explain how the representations are "false."  *Koch*, 203 F.3d at 1236 (internal quotation marks omitted); *see also Multimedia Games, Inc. v. Network Gaming Int'l Corp.*, No. 98-CV-67, 1999 WL 33914442, at *7 (N.D. Okla. Sept. 3, 1999) ("[M]ere allegations of fraud in an action based solely in contract are insufficient to state a cause of action based on fraud.").  While "intent, knowledge, and other conditions of a person's mind may be alleged generally," Plaintiffs' conclusory allegations and ambiguous references to Defendants' conduct are insufficient to plausibly plead "the circumstances

constituting fraud." Fed. R. Civ. P. 9(b). In addition, such broad allegations fail to plausibly show that any defendant's representation was recklessly made or knowingly false. *See Bowman*, 212 P.3d at 1218. Accordingly, this fraud claim must be dismissed.

### D. Plaintiffs' Claim for Conversion

"Conversion is defined by Oklahoma law as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 825 (Okla. 2016) (internal quotation marks omitted). "Conversion requires some form of wrongful possession or act of control over the property" in question. *Id.* (internal quotation marks omitted).

Plaintiffs' conversion claim is premised upon: (1) the allegation that, when Plaintiffs became "unable to pay their bills" due to Premier's improper conduct, Premier informed Plaintiffs that they would have to pay the outstanding principal on the vehicle-purchase loans unless they transferred ownership of the vehicles back to Premier; and (2) the allegation of repairs to Plaintiff Wills' 2012 Peterbilt that were not "needed or authorized," cited above. Am. Compl. ¶¶ 29, 33-35; *see* Pls.' Resp. at 13-15.[6]

Defendants do not specifically move for dismissal of the claim based on transfer of the vehicles' ownership, and so that claim shall remain pending. As to the vehicle-repair claim, Defendants first argue that, even assuming Premier made unauthorized repairs, the vehicle was only in Premier's "temporary possession" and there was no exercise of "dominion" over the vehicle. *See* Defs.' Mot. at 17. As noted by Plaintiffs, however, an

---

[6] Plaintiffs concede that this claim should be dismissed as to the Individual Defendants. *See* Pls.' Resp. at 13.

act of dominion can be temporary in nature.  *See Sw. Orthopaedic Specialists, P.L.L.C. v. Allison*, 439 P.3d 430, 436 (Okla. Civ. App. 2018); *see also Am. Biomedical Grp.*, 374 P.3d at 825 ("Conversion of personal property does not require that the property be obtained by wrongful means, but it must be either obtained or appropriated without the owner's consent.").  Because Plaintiffs plausibly plead that Premier exercised control over the vehicle that was without authorization and was "in denial of or inconsistent with [Plaintiff Wills'] rights therein," dismissal is not warranted on this basis.  *Am. Biomedical Grp.*, 374 P.3d at 825 (internal quotation marks omitted).

Defendants also argue that Plaintiffs fail to specifically plead that Plaintiff Wills actually paid over to Premier the $12,000-$13,000 that was charged for the unauthorized repairs and therefore Plaintiffs do not "satisfy the necessary damages element" of a conversion claim.  Defs.' Mot. at 17; Defs.' Reply at 4 (citing Okla. Unif. Civil Jury Instruction No. 27.1).  As noted by Plaintiffs, however, the Amended Complaint does allege that there were "actual damages" resulting from Defendants' conduct.  *See* Am. Compl. ¶¶ 37(A), 48.  Further, though not argued by Plaintiffs, being improperly subjected to loss of use of the commercial vehicle and to debt on the unnecessary repair fees plausibly demonstrates harm to Plaintiff Wills as a result of Premier's conduct.  *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (stating that "the degree of specificity necessary to establish plausibility and fair notice, and

therefore the need to include sufficient factual allegations, depends on context"). Accordingly, this claim shall not be dismissed at this time.

IV.     *Amendment of the Pleading*

In their Response, Plaintiffs request that they be permitted to file a second amended complaint to "clarify[]" their claims.  Pls.' Resp. at 27, 28-29.  Plaintiffs, however, have not submitted this request in compliance with Local Civil Rule 15.1 and have not provided an adequate explanation of how such amendment would remedy the pleading deficiencies cited herein.  Accordingly, the Court does not find that justice requires leave to amend at this time.  *See* Fed. R. Civ. P. 15(a)(2).

CONCLUSION

For the reasons cited herein, Defendants' Motion to Dismiss (Doc. No. 14) is GRANTED IN PART and DENIED IN PART.  Specifically:

(1) Plaintiffs' "Content Claim" against Premier, alleging that the lease agreements facially violated the federal Truth-in-Leasing Regulations, is dismissed without prejudice as to the claimed violation of 49 C.F.R. § 376.12(j)(3) and shall otherwise remain pending.  Plaintiffs shall be permitted to seek only declaratory and injunctive relief on this claim.

(2) Plaintiffs' "Compliance Claim" against Premier, alleging that Premier failed to adhere to and perform the federal Truth-in-Leasing Regulations, is dismissed without prejudice as to the challenges to the noncompete provision and the insurance requirements and shall otherwise remain pending.  Plaintiffs may seek actual damages on this claim.

(3) Plaintiffs' state-law claims for breach of contract and for conversion against Premier shall remain pending.

(4) Plaintiffs' state-law claims for fraud and deceit against Premier are dismissed without prejudice, with the exception of the claim premised upon Plaintiff Wills' purchase of his vehicle from Premier.

(5) Plaintiffs' state-law claims for fraud and deceit and for conversion are dismissed without prejudice as to the Individual Defendants, leaving Premier as the sole remaining defendant in this action.

- and -

(6) Plaintiffs' request to further amend the pleading is denied without prejudice.

This matter shall be set for a status and scheduling conference on the Court's next available docket.

IT IS SO ORDERED this 30th day of September, 2022.

CHARLES B. GOODWIN
United States District Judge